# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| CALNSHIRE ESTATES, LLC, | Bankruptcy No.: 17-14457-elf |
| Debtor. | |

**COMBINED MOTION OF PRUDENTIAL SAVINGS BANK (I) FOR EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE; (II) TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE CASE NUNC PRO TUNC; AND (III) FOR IMMEDIATE RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(3)**

Prudential Savings Bank ("**Prudential**"), by and through its undersigned counsel, Obermayer Rebmann Maxwell & Hippel, LLP, hereby moves this Court for expedited consideration, shortened time, and limited notice and the entry of an order designating the Chapter 11 bankruptcy case of Calnshire Estates, LLC ("**Calnshire**" or the "**Debtor**") as a single asset real estate case ("**SARE**") *nunc pro tunc* pursuant to Sections 101(51B), 105 and 362(d)(3) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), and entering sanctions against the Debtor in the form of granting immediate stay relief to Prudential pursuant to Section 362(d)(3) of the Bankruptcy Code (the "**Motion**"). In support thereof, Prudential states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the instant motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein are Sections 101(51B), 105, and 362(d)(3) of the Bankruptcy Code.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

3. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

4. On June 30, 2017, Calnshire filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the **"Petition"**).

5. The Petition, executed by Renato Gualtieri ("**Gualtieri**") as sole member of Calnshire, did not designate Calnshire as a SARE under 11 U.S.C. § 101(51B), though in the Petition, the location of Calnshire's principal assets is listed as "real estate project located in West Caln Township, Chester County, Pennsylvania."

6. In its Schedule A, Calnshire lists its only real estate asset as a single family residential real estate development consisting of 26 remaining lots (the "**Calnshire Property**"). (Docket No. 27).

7. Calnshire currently has no operations or income. Its sole business is the development of Calnshire Property, and, if permitted to continue its futile venture, the sale of single family residential homes. Calnshire has no other substantial business operations, and all revenue would arise from the sale of the real property.

8. On or about October 18, 2017, the Debtor filed a Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement and to Confirm a Plan Pursuant to Section 1112(d) of the Bankruptcy Code (the "**Exclusivity Motion**"). The hearing on the Exclusivity Motion is scheduled for November 22, 2017 at 11:00 a.m.

9. To date, Calnshire has not proposed a confirmable plan of reorganization, nor has it made any interest payments to Prudential since filing the Petition nearly four (4) months ago.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

5201320 v2

### III. LEGAL ARGUMENT

#### A. The Debtor is Undoubtedly a SARE under the Bankruptcy Code

10. Section 101(51B) of the Bankruptcy Code defines the term "single asset real estate" (SARE) as follows:

> real property constituting a single property or ***project***, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B) (emphasis added).

11. Courts have interpreted the SARE definition to require the presence of each of three (3) elements for a debtor to be designated as such: "(1) the debtor must own real property constituting a single property or project…(2) the real property must generate substantially all of the debtor's gross income; and (3) the debtor must conduct no substantial business other than that of operating the real property and activities incidental thereto." In re Scotia Pacific Co. LLC, 508 F.3d 214, 220 (5th Cir. 2007); see also In re McGreals, 201 B.R. 736, 741 (Bankr. E.D. Pa. 1996) (including a debt limitation removed with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")).

12. The designation of a debtor as a SARE debtor is significant because it triggers a means for mandatory, expedited stay relief under Section 362(d)(3). Section 362(d)(3) provides that in cases of a SARE debtor:

> the court '*shall*' grant stay relief unless the debtor has either 'filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time' or has 'commenced monthly payments that…are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditors interest in the real estate.

3

In re Amagansett Family Farm, Inc., Case No.: 11-73929, 2011 Bankr. LEXIS 4161, at *7 (Bankr. E.D.N.Y. Oct. 25, 2011) (quoting 11 U.S.C. § 362(d)(3) (emphasis added)).

13. In order to avoid automatic stay relief, a SARE debtor must either propose a confirmable plan or commence monthly payments within "90 days after the entry of the order for relief (or such later date as the court may determine for cause entered within that 90 day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later." 11 U.S.C. § 362(d)(3).

14. Relief under § 362(d)(3) is mandatory where a SARE debtor fails to strictly comply with its provisions. Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.), 191 B.R. 320, 327 (Bankr. E.D. Va. 1996).

15. If a court makes a SARE determination after the ninety (90) day period following entry of the order for relief has expired, the 30-day deadline to file a confirmable plan or commence monthly payments may not be extended. Amagansett Family Farm, 2011 Bankr. LEXIS 4161 at *8-*9 (court denied debtor's request for extension of stay for sixty (60) days after determination of value of secured creditor's claim, as SARE determination was made well after expiration of 90 days from petition date).

16. Section 362(d)(3) was enacted by Congress as part of the Bankruptcy Reform Act of 1994 "to target abusive filings by Chapter 11 debtors with little or no cash flow and no means to fund a reorganization or to make adequate protection payments." In re Alvion Props., 538 B.R. 527, 536 (Bankr. S.D. Ill. 2015); see also LDN Corp., 191 B.R. at 326 ("Congress expressly attempted to avoid the usual delays experienced in Chapter 11 in single asset real estate cases, which historically have been filed to avoid a foreclosure and in the hope that the debtor can come up with some form of a miracle in order to formulate an acceptable plan"). Even prior to the

Bankruptcy Reform Act, courts were familiar with single asset cases, which were generally known as "real estate entities attempting to cling to ownership of real property in a depressed market…rather than businesses involving manufacturing, sales or services." In re Philmont Dev. Co., 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995).

17.     Congress further expressly defined a SARE debtor as one whose sole asset is a single property or project.  "[T]he term 'single project' can reasonably be interpreted as broad enough to encompass the series of semi-detached houses owned by the [debtors]." Philmont Dev. Corp., 181 B.R. at 224; see also In re Kkemko, 181 B.R. 47, 50 (Bankr. S.D. Ohio 1995) ("apartment buildings and *residential projects* are within the scope of [single asset real estate]") (emphasis added).

18.     When determining whether two (2) or more separate properties are a "single project" under Section 101(51B) of the Bankruptcy Code, "the properties must be linked together in some fashion in a common plan or scheme involving their use." McGreals, 201 B.R. at 742. Several factors are considered by courts when making this determination:

> (1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future development, sale or abandonment of the properties.

In re Hassen Imp. P'ship, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012) (citations omitted); see also In re Webb MTN, LLC, Case No. 07-32016, 2008 Bankr. LEXIS 691 (Bankr. E.D. Tenn. March 6, 2008) (separate parcels were part of one land development considering the financing and acquisition of the parcels); In re Sargent Ranch, LLC, Case No. 10-00046-PB11, 2010 Bankr. LEXIS 2607 (Bankr. S.D. Cal. Aug. 6, 2010) (debtor's intentions for separate developments of one large piece of real estate do not overcome its current status as single asset real estate).

5

19. Applying current case law to the instant matter, it cannot be seriously argued that Calnshire is anything other than a SARE debtor. Its sole asset is the collection of 26 real property lots in Chester County, which Calnshire itself refers to as a "single family residential real estate development." Even if Calnshire seeks to create separate developments on the Calnshire Property, in its current state, the Calnshire Property is a singular project. See Webb MTN, LLC, 2008 Bankr. LEXIS 691 at *16 (multiple plans part of one land development); Sargent Ranch, LLC, 2010 Bankr. LEXIS 2607 at *7 (undeveloped plans render contiguous parcels a single project).

20. Further, Calnshire's sole asset would be its only source of income, were it generating any. Since construction has halted, Calnshire is unable to sell any units on the Calnshire Property, and by its own admission, is not generating income. It thus follows that Calnshire is not engaged in any substantial business other than operating the Calnshire Property, and activities incidental thereto. It has no other active business.

21. In light of the foregoing, Calnshire must be designated as a single asset real estate debtor, and as set forth *infra*, since more than ninety (90) days has passed since filing the Petition without the proper designation of Calnshire as a SARE debtor, Prudential is entitled to immediate stay relief under 11 U.S.C. § 362(d)(3) with respect to the Calnshire Property.

**B.     Sanctions in the Form of *Nunc Pro Tunc* SARE Designation and Immediate Stay Relief Are Warranted**

22. This Court has the inherent power to sanction arising from its need to exercise its enumerated powers; such power is independent of the sanctioning power provided by Fed. R. Civ. P. 11. Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1224 (3d Cir. 1991).

6

23. Under this inherent power, the Court may enter sanctions against an attorney or party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). Sanctions may be awarded for bad faith filings as well as the commencement or continuation of an action in bad faith. In re Gorshstein, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (citing In re Spectee Group, Inc., 185 B.R. 146, 155 (S.D.N.Y. 1995)).

24. Additionally, Section 105(a) of the Bankruptcy Code provides that this Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A court may impose sanctions under Section 105(a) in conjunction with its inherent power. Spectee Group, 185 B.R. at 155. It is not required to enter sanctions "in a piecemeal fashion" where only broader authority will effectively deter improper conduct. In re Rimstat, 212 F.3d 1039, 1049 (7th Cir. 2000) (finding Fed. R. Bankr. P. 9011 was insufficient to appropriately sanction culpable parties).

25. Before a court may sanction a party or counsel, it must find that the party acted in bad faith. In re Mondelli, Civ. No. 12-4659 (WJM), 2013 U.S. Dist. LEXIS 38995, *16 (D.N.J. March 21, 2013) (citing Fellheimer, Eichen & Braverman, 57 F.3d at 1224).

26. Where a bankruptcy filing is motivated solely to prevent a creditor from enforcing its rights, the filing is considered an abuse of process. In re Collins, 250 B.R. 645, 657 (Bankr. N.D. Ill. 2000) (citing Jones v. Bank of Santa Fe (In re Courtesy Inns), 40 F.3d 1084, 1085, 1090 (10th Cir. 1994)); see also In re Ravick, 106 B.R. 834, 844 (Bankr. D.N.J. 1988).

27. In the instant matter, Calnshire, through Gualtieri, has frustrated and thwarted the purpose of Section 362(d)(3) by intentionally omitting disclosure that it was, in fact, a SARE case in its Petition. Instead of designating Calnshire as a SARE case, Calnshire and Gualtieri

7

avoided the expedited track Congress intended for SARE cases, and the instant matter has now been pending for well beyond the ninety (90) days Congress contemplated for such cases to submit confirmable plans of reorganization. Calnshire has further exploited its bad faith filing by now seeking an extension of time to exclusively file its Chapter 11 Plan, which is expressly barred in accordance with <u>LDN Corp.</u> and <u>Amagansett Family Farm</u>. This is patently an abuse of the bankruptcy process designed to improperly delay Prudential's enforcement of its rights.

28. Because Calnshire and Gualtieri engaged in precisely the conduct that Congress sought to avoid with the enactment of 11 U.S.C. § 362(d)(3), sanctions under Section 105(a) and the Court's inherent power are warranted. Rather than tacitly endorse such behavior through additional extensions of time under either Fed. R. Bankr. P. 9011 or Section 1112(d) of the Bankruptcy Code, the most effective sanction is to designate Calnshire as a SARE debtor *nunc pro tunc* to the Petition filing date, thereby barring Calnshire from any extension of time to file a reorganization plan and granting Prudential immediate stay relief.

IV. **REQUEST FOR EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE**

29. In accordance with L.B.R. 5070-1(f), and 9014-1, Prudential seeks expedited consideration of the Motion. Prudential requests approval of the request for expedited consideration pursuant to L.B.R. 9014-2.

30. Pursuant to L.B.R. 5070-1(f)(3), this request for expedited consideration may be stated as part of the Motion.

31. Prudential respectfully submits that expedited consideration of the Motion is appropriate under this circumstance for the Court to properly consider this Motion and the Exclusivity Motion at the same time.

32. Prudential respectfully requests a hearing on the Motion on the same date as the Exclusivity Motion: **November 22, 2017, at 9:00 a.m**. Prudential further believes that an expedited hearing will not prejudice the Debtor or parties in interest.

33. The undersigned has contacted the Office of the United States Trustee and counsel to the Debtor as required by L.B.R. 5070-1(f)(1). At the time of filing, counsel to the Debtor has no objection to the requested hearing date, and the Office of the United States Trustee has not responded.

34. Furthermore, Prudential also requests (a) that this Court permit notice of the hearings to be served by overnight mail, facsimile transmission or by electronic means upon (i) the Office of the United States Trustee, (ii) counsel to the Debtor and (iii) all parties who have timely filed requests for notice under Bankruptcy Rule 2002, and (b) that this Court limit the notice period accordingly. Prudential believes that such notice is sufficient under the circumstances for the expedited hearing.

35. Reduction of the time periods in question is not prohibited under Fed. R. Bankr. P. 9006(c)(2) and the rules listed therein.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, Prudential respectfully requests that this Honorable Court enter an Order designating the matter a SARE case *nunc pro tunc*, granting immediate stay relief under Section 362(d)(3), and awarding such other relief that the Court deems necessary and just.

                Respectfully submitted,

Dated: October 31, 2017        BY:    */s/ Edmond M. George*
                                          Edmond M. George, Esquire
                                          Michael D. Vagnoni, Esquire
                                          OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
                                          Centre Square West
                                          1500 Market Street, 34th Floor
                                          Philadelphia, PA 19102
                                          Tel: (215) 665-3000
                                          Fax: (215) 665-3165
                                          Email: edmond.george@obermayer.com

                                          *Counsel to Prudential Savings Bank*